IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL K. BENSON,<br><br>   PLAINTIFF,<br>v.<br><br>NORTHAMPTON COUNTY,<br><br>   DEFENDANT. | Civil Action No.: _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff Jill K. Benson, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages and other relief on behalf of Plaintiff Jill K. Benson (hereinafter "Plaintiff" or "Ms. Benson"), a former employee of Northampton County (hereinafter "Gracedale" or "Defendant") who worked for the County at its Gracedale Nursing Home location. Despite her loyalty and consistent performance, Ms. Benson was subjected to discrimination and harassment on the basis of her age and disability and/or perceived disability, was denied accommodation for her disability, and was retaliated against for requesting an accommodation for her disability and for complaining about discrimination and harassment, culminating in her wrongful termination on October 31, 2021.

2. This action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the American with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and the Rehabilitation Act.

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. All conditions precedent to the institution of this suit have been fulfilled. On July 25, 2022, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On September 29, 2022, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.

## VENUE

6. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

7. This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff was employed and terminated by Defendant in this jurisdiction.

## PARTIES

8. Plaintiff Jill K. Benson is an adult female citizen and resident of East Bangor, Pennsylvania and the United States of America.

9.  Ms. Benson is fifty-seven (57) years old and within the class of individuals protected against discrimination by the ADEA.

10. Ms. Benson is a qualified individual with a disability within the meaning of the ADA.

11. Ms. Benson's disability affects a major bodily function and substantially limits one or more major life activities.

12. Ms. Benson's disability has affected her for a period far in excess of six months.

13. Defendant owns and operates an assisted living facility located at 2 Gracedale Avenue, Nazareth, Pennsylvania 18064 where Ms. Benson was employed.

14. At all relevant times, upon information and belief, Defendant is and has been an employer employing more than 500 employees.

15. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

16. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of their employment under the direct control of Defendant.

17. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

18. At all relevant times hereto, Plaintiff Jill K. Benson was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

19. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

20. During her employment, Defendant regarded Ms. Benson as disabled.

21. This cause of action arose out of transactions or occurrences that took place in whole or in part in Nazareth, Pennsylvania.

22. Defendant conducts substantial business within Nazareth, Pennsylvania.

23. This Honorable Court has personal jurisdiction over the Defendant.

## **FACTS**

24. Ms. Benson was hired by Gracedale Northampton County on or about February 4, 2013 as a Nursing Supervisor.

25. During Ms. Benson's employment with Gracedale, Ms. Benson performed her duties in an excellent and hardworking manner.

26. Indeed, Ms. Benson never received any form of disciplinary action during her employment with Gracedale.

27. Despite her dedication to her job and consistently excellent performance, Ms. Benson was subjected to persistent harassment and discrimination on the basis of her age and disability or perceived disability and wrongfully terminated as a result of such discrimination.

28. On or about March 10, 2020, Ms. Benson suffered a stroke.

29. Ms. Benson subsequently took time off work.

30. When Ms. Benson returned to Gracedale on January 6, 2021, it was suggested by the Registered Nursing Assessment Coordinator (RNAC) Supervisor to the Nurse Administrator that Ms. Benson was on restrictions and could be placed in her department as an RNAC, which would have accommodated Ms. Benson's restrictions.

31. Ms. Benson had previously applied for the RNAC position and had been scheduled to have an interview on March 10, 2020 – the day that Ms. Benson had her stroke.

32. Prior to the interview, Ms. Benson had already been given a verbal offer by the RNAC Supervisor, as well as four other individuals.

33. Despite the verbal offer and the RNAC Supervisor herself proposing that Ms. Benson work in the RNAC Department, the Nursing Administrator and Assistant Administrator wanted to hold another interview, which had never been done in the past.

34. Ultimately, Ms. Benson was not granted the position transfer and was not provided with any explanation as to why her transfer was declined.

35. Ms. Benson continued to be placed on restrictions with no accommodation.

36. Ms. Benson was not to supervise, but was left alone as a supervisor on two separate occasions.

37. While Ms. Benson was still on the payroll as a Nursing Supervisor, she was asked to shadow the Risk Manager, who was going to take a leave of absence, and conduct her work in her stead.

38. After the Risk Manager went on leave, Ms. Benson took on her role and all of the job responsibilities.

39. The Director of Nursing (DON) stated that Ms. Benson was not doing a complete job.

40. However, this was wholly antithetical to her other statements, particularly those noted in her emails that Ms. Benson was doing a wonderful job.

41. Several individuals Ms. Benson worked with on the state level can corroborate Ms. Benson's excellent performance.

42. Ultimately, the Risk Manager decided that she was not going to return to the position.

43. The job was then posted for application.

44. Ms. Benson approached the DON about applying for the job, but noted that she didn't have her certification.

45. Despite the fact that Ms. Benson had been adequately fulfilling the duties of the position already, the DON did not work with Ms. Benson to find a way to help her maintain the position.

46. Instead, Defendant hired an individual who was less qualified with Ms. Benson as they not only did not have their certification but was also Ms. Benson's junior in nursing of about eighteen years.

47. Ms. Benson also applied for a staff development position, which the Human Resources Labor Relations Officer told Ms. Benson she was welcome to apply to.

48. However, the Staff Development Coordinator told Ms. Benson that she would have to pass meds, which Ms. Benson was restricted from doing due to her disability.

49. This Coordinator later on left a voicemail on the nursing scheduler's phone stating that "one of the nurses in staff development is not to pass meds nor will she ever pass meds," directly targeting Ms. Benson and her restriction due to her disability.

50. Ms. Benson complained to Human Resources who ultimately told Ms. Benson to apply for the position.

51. However, Ms. Benson was denied the position.

52. Ms. Benson was denied each and every demotion to which she applied, even those that would have accommodated her disability, and was never promoted.

53. Ms. Benson complained about discrimination, including in writing to Human Resources on September 13, 2021.

54. Despite Ms. Benson's excellent performance, shortly after seeking accommodations and complaining about the discrimination, on or about October 31, 2021, Defendant terminated Ms. Benson.

55. Defendant failed to engage in a good faith, interactive process with respect to accommodating Ms. Benson's disability.

56. Defendant refused to accommodate Ms. Benson and the restrictions placed on her due to her disability and instead actively sought to prevent Ms. Benson from moving into a position that would have accommodated her disability.

57. After approximately nine years of service, Ms. Benson was terminated at the age of fifty-six.

58. Given her exemplary work performance during her employment with Defendant, Defendant's refusal to accommodate Ms. Benson's disability, the circumstances surrounding her termination, and Defendant's treatment of Ms. Benson leading up to her termination, Ms. Benson maintains that she was discriminated against and harassed on the basis of her age and disability and/or perceived disability, that she was retaliated against for seeking accommodation of a disability, and that she was retaliated against for complaining about discrimination and harassment.

59. Ms. Benson has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

60. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Benson severe emotional distress.

61. Ms. Benson has suffered financial losses, which include, among other things, lost wages, medical expenses, and an obligation for attorneys' fees and costs of bringing suit, as a proximate result of the actions and inactions of Defendant.

## COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

62. Plaintiff Jill K. Benson repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

63. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

64. In discriminating against and harassing Ms. Benson on the basis of her disability and/or because Defendant regarded Ms. Benson as disabled, in denying Ms. Benson her requested accommodation, and in retaliating against Ms. Benson for her complaints and for seeking reasonable accommodations, Defendant violated the ADA.

65. Said violations were intentional and willful.

66. Said violations warrant the imposition of punitive damages.

67. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Jill K. Benson has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

68. Plaintiff Jill K. Benson repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

## COUNT II
### Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

69. Plaintiff Jill K. Benson repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

70. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the ADEA.

71. Plaintiff is, and was at the time of her termination, over forty years of age, and an individual within the class protected by the Age Discrimination in Employment Act.

72. In discriminating against and harassing Ms. Benson because of her age and in retaliating against Ms. Benson for her complaints, Defendant violated the ADEA.

73. Defendant's violations were intentional and willful.

74. Defendant's willful violations of the ADEA warrant an award of liquidated damages.

75. As the direct and proximate result of Defendant's violation of the Age Discrimination in Employment Act, Plaintiff Jill K. Benson has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT III
### The Rehabilitation Act, as Amended

76. Plaintiff Jill Benson repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

77. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Rehabilitation Act.

78. Defendant violated the Rehabilitation Act by discriminating against and harassing Ms. Benson on the basis of disability and/or because Defendant regarded Ms. Benson as disabled.

79. In further violation of the Rehabilitation Act, Defendant failed and/or refused Ms. Benson's requests for accommodation of her disabilities or perceived disabilities, failed to engage in a good faith, interactive process with respect to Ms. Benson's requests for accommodation, and retaliated against Ms. Benson for having requested accommodations.

80. Defendant also violated the Rehabilitation Act by retaliating against Ms. Benson for complaining about discrimination and harassment.

81. Said violations were intentional and willful.

82. Said violations warrant the imposition of punitive damages.

83. As the direct and proximate result of Defendant's violations of the Rehabilitation Act, Plaintiff Jill Benson has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jill K. Benson respectfully requests that this Court enter judgment in her favor and against Defendant Northampton County, and Order:

   a. Appropriate equitable relief, including reinstatement or front pay;

   b. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, retaliation and wrongful termination;

    c.  Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

    d.  Defendant to pay Plaintiff punitive damages;

    e.  Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

    f.  Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

    g.  Plaintiff be granted any and all other remedies available under the ADA; and

    h.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

*/s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA  19103

*Attorneys for Plaintiff Jill K. Benson*

Dated:  December 23, 2022